KING v. CARUBA.

(Supreme Court, Appellate Term. December 22, 1909.)

1. NEW TRIAL (§ 6*)—APPEAL AND ERROR (§ 977*)—REVIEW—DISCRETION OF COURT—NEW TRIAL.

The granting or denial of a new trial, rests in the sound discretion of the trial court, and its exercise should not be lightly disturbed.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 9, 10; Dec. Dig. § 6;* Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

2. NEW TRIAL (§ 150*)—NEWLY DISCOVERED EVIDENCE—SUFFICIENCY OF SHOWING ON MOTION.

In an action for assault, affidavits on a motion by defendant for a new trial for newly discovered evidence held sufficient to show plaintiff was employed for a considerable part of the time when he claimed he was unable to work on account of his injuries, and to entitle defendant to relief.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 306–310; Dec. Dig. § 150.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from City Court of New York, Trial Term.

Action by Thomas King against Joseph Caruba. Judgment for plaintiff. From an order denying a new trial, defendant appeals. Reversed.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

Hunt, Hill & Betts (George W. Betts, Jr., and Morris D. Ferris, of counsel), for appellant.

James T. Sullivan, for respondent.

LEHMAN, J. Plaintiff has recovered a judgment against the defendant in an action for assault. His injuries were apparently not in themselves severe or disabling, and it hardly seems to me that a blow on the mouth, which loosened two teeth, should prevent a man from eating, so that he could not work for nine weeks thereafter. Upon the appeal from the judgment, I was, however, of the opinion that, since the plaintiff's testimony on this point was uncontradicted, even by medical testimony, and evidently believed by the jury, its improbability was not so apparent that we would be justified in setting aside the solemn determination of 12 men. Aside from this improbability, the testimony of the plaintiff and his corroborating witness was clear and consistent, and, though contradicted by evidence which outweighed it greatly in a quantitative sense, and, so far as the record would show, in a qualitative sense, also, yet this preponderance in favor of the defendant may be only apparent, and the jury may have been convinced, by the appearance and manner of testifying of the plaintiff and his corroborating witness, that they were telling the truth, and that the defendant and his numerous witnesses were all either mistaken or untruthful. I therefore reluctantly reached the conclusion that it was not the function of an appellate court to reverse the judgment or to set aside the verdict of the jury found under such circumstances.

Upon the trial the plaintiff testified that he was unable to do any work for nine weeks after August 22, 1908, the date of the alleged assault. After the trial the defendant moved for a new trial on newly discovered evidence. This evidence was that the plaintiff had been employed on the docks of the White Star Line during the month of September, 1908, for 38½ hours. If this evidence is true, it will show, not only that the alleged injuries were not as severe as the plaintiff testified, and as the jury evidently believed, but it will also show that the plaintiff himself committed perjury. Upon this motion the defendant's former paymaster presented an affidavit stating that he is now employed by the White Star Line; that on August 5, 1909, he went to Pier 48 of the White Star Line with one Joseph Ventura and with one of the defendant's attorneys, and that in the presence of these persons and of one Dahl, the timekeeper of the steamship company, the plaintiff stated that he had worked on said pier during the month of September, 1908, under the name of Tom King No. 2; and that an examination of the time books showed that Thomas King No. 2 had been employed on said pier for 38½ hours regular time and 13 hours overtime during the week ending Wednesday, September 16,

1908, and had received the sum of $17.40 for his services. The attorney for the defendant, an officer of this court, swears to the same facts. Dahl the timekeeper, swears that he has known the plaintiff in this action for eight years; "that deponent has been shown Thomas King, the plaintiff in this action, and who admitted that he was the plaintiff, and said King also stated to deponent that he was the man known as 'Tom King No. 2' on the said Pier 48;" "that said Thomas King was employed by the said White Star Line on Pier 48, North river, to deponent's knowledge, for 38½ hours regular time and 13 hours overtime during the week ending Wednesday, September 16, 1908, said King earning thereby the sum of $17.40."

These affidavits are met by the affidavit of the plaintiff, denying absolutely that he had stated that he worked on Pier 48 under the name of Thomas King No. 2, or that he admitted that he had worked on said pier during the month of September, 1908. He states that he was called into the office on August 5, 1909, and the timekeeper asked the attorney, "Is this the Tom King you wanted?" and the attorney said, "Yes," and that he then left the office; that he never worked on that pier, or any other pier, in September, 1908, but that a cousin of the same name, who is now in Ireland, worked there in September, 1908. Plaintiff's attorney also presents an affidavit that Dahl, the timekeeper, stated to him that it was not true that the plaintiff had admitted in his presence that he had worked upon the pier of the White Star Line during the month of September, 1908, and that he had no personal knowledge, except as derived from the books, that the plaintiff had worked upon the pier; but he refused to make any affidavit for him.

Upon this appeal the plaintiff properly concedes that the only question is whether the court below believed, and was justified in believing, the affidavits submitted by the plaintiff, and whether these affidavits were sufficient to destroy the effect of the moving affidavits. It seems to me that these answering affidavits are of little weight. The plaintiff has testified absolutely upon the trial to certain facts. The purpose of the newly discovered evidence is to show that his testimony was false. We may not lightly presume a man guilty of perjury; but, if this plaintiff was guilty of perjury at his trial, then obviously he would not hesitate to swear again that his first testimony was true. The affidavit of his attorney cannot, however, be disregarded so lightly. Like the defendant's attorney, he is an officer of this court; and we should, if possible, give credence to anything which he may swear to. His affidavit is, however, based only on hearsay (that is, upon what the timekeeper Dahl told him); and he has, apparently, not attempted to use the court's powers to obtain an affidavit from Dahl himself. Even if Dahl stated the truth to him, and plaintiff did not admit that he worked on Pier 48 during the month of September, 1908, we still have uncontradicted the statements that Dahl knew one Thomas King, that the same Thomas King is the plaintiff herein, that the same Thomas King is described on the books of the White Star Line as Thomas King No. 2, and that the books show that Thomas King No. 2 worked during September, 1908. If it were conceded that there were no pos-

sible confusion of identity, then the newly discovered evidence would certainly and without question change the result upon a new trial. Since there is a claim that there is a confusion of identity, the possible effect of the newly discovered evidence is to reduce the certainty to a probability; but the newly discovered evidence is still a proper basis for the granting of a new trial.

While the granting or denial of a new trial rests in the sound discretion of the court below, and the exercise of this discretion should not be lightly disturbed, I feel that in this case we should reverse the order and grant the motion. The justice below who refused to grant the motion did not preside at the trial, and had no greater opportunity of seeing the witnesses, and we can judge of the weight of the affidavits as well as he. The affidavits seem to me to present a clear case where justice demands a new trial.

The order should therefore be reversed, with $10 costs and disbursements, and a new trial ordered, upon payment by defendant of all costs, including costs upon the appeal from the judgment; the costs and disbursements upon this appeal from the order to be offset against said costs. All concur.